Case number 15-1257 Arrowood Indemnity Company v. Michael Cristini et al. Argument not to exceed 15 minutes per side. Mr. Desi for the appellant. You may proceed. Good morning, Your Honors. May it please the Court. My name is Michael Desi. I represent the appellant in this matter, Michael Cristini. And we're here on a diversity case which looks at Michigan law, and we are interpreting what Michigan law holds as far as the fraudulently inducement of a settlement. That was the question that was presented to the District Court. The District Court granted the defendant's motion on a 12b-6 and concluded that we failed to state a claim. We respectfully disagree with the District Court, and we believe that there's controlling precedent in Michigan which recognizes our claim and defeats the appellee's arguments on appeal. And specifically I'm referring to the Cordes case, which was decided by the Michigan Supreme Court. And in the Cordes case, the Michigan Supreme Court recognized the specific type of claim that was made in this case, which is for the fraudulent inducement of a settlement, if an insurer misrepresents the extent of its coverage or the amount of insurance that is available. And that was specifically the allegation that was relied upon by the Michigan Supreme Court in Cordes, and that was specifically the allegation that was alleged in this case. Essentially the facts are that. I have a question for you. I understand what the Cordes case holds, but where the fraudulent misrepresentation is made, but the coverage is accurately stated in the policy, what effect would that have? Would the written provisions and coverage in the policy negate any alleged reliance on a subsequent representation? Judge Donald, I don't believe it does, and Judge Lawson addressed that point in his opinion. And the reason is that the basis of the fraud does not rely upon the interpretation of the policy. The fraudulent representations alleged are that Arrowood made the representation that it would not participate or contribute to a settlement, regardless of what its policy said. And there was a declaratory judgment action filed on the policy. But as Judge Lawson pointed out in his opinion, he said the thrust of the plaintiff's complaint is not reliance on the policy provisions and an interpretation of them. The defendants... And you came back later and said, yes, it was. Well, no, I don't believe we came back and said that. Judge Lawson, in his motion for... Well, I disagree with that. So you're focusing on the argument that the misrepresentation was that they would not contribute. That's correct, that they would not contribute or participate. And on that point, Your Honor, Judge Rogers' question... How would that have made a difference if they settled for considerably less than what that limit was? It wasn't really going on in the Cordis case. Well, that question, I believe that goes to damages. And I believe that the Supreme Court adequately addressed the issue of damages. It goes to damages if it didn't have any effect. Well, it did have an effect. I mean, any lawyer... It would have if they settled for something that was so much less than what that limit was. The limit was 2.3. 2.2. 2.2. They settled for 1.5. That's right. Well, I disagree. Well, you can't disagree with me. I'm not saying anything. I'm just asking the question. Sure. The point to be made about that is any lawyer looks at the insurance coverage when they're negotiating a settlement. They look at what the caps are, and then that's the point of negotiation that's made. Now, in this case, the defendants... It would make sense to look at that when that's the extent of what they're liable to get. But the whole point that the district judge made, as I understood it, was that they would know that they could get more. This is a solvent defendant. Well, that point... Isn't that distinguished, Coras? I don't think so. The point that you could... Why not, though? Well, you can always collect it. You could always try to collect against a defendant. You can always try to collect, but if you know that this is some defendant whose resources are basically the insurance coverage, then you negotiate assuming what their resources are. Well, I think that goes... If you insist on getting all of their resources, then they're not going to settle because they might as well go to trial. But if you know they have a lot more and then you settle for a lot less, it just becomes hard to understand why that would have made a difference. I think that's the jury question. That's their argument for whether it's reasonable or unreasonable. Okay, you can say it's a jury question, but how could a jury come to that conclusion? Well, because they would make the argument to the jury that if they accepted this, then they knew that this was the amount that they could have received, and therefore their reliance was reasonable or unreasonable. That's the jury question. For them to say... It would be the jury's decision to decide whether the fraud was reasonable or whether you relied on it reasonably or unreasonably. I see what the concern is that I'm raising. I understand the concern, but... You just disagree with it. Well, if... I'm afraid to talk, to explain why that's not... Well, sure. But, Your Honor, if we were to accept your point, then that vitiates any cause of action for a fraudulently induced settlement. If it was a defendant who that was their only resources, then it would make very good sense to say that we settled for less than the total amount because otherwise we wouldn't be able to get a settlement out of them. But those were not the facts that the Michigan Supreme Court pointed out were dispositive as to whether you stated a claim. This is just simply whether you state a claim. The point that you make would vitiate any claim for a fraudulently induced settlement. I would if I changed the facts slightly and then there's a claim. But I believe... You say those aren't the facts, but the claim is still there. I mean, it's still in Michigan law that you can do something like this. It's just on these facts it just doesn't work. Well, the Second Circuit looked at a very similar case in Slotkin, and that case was settled for less than what was purported to be the maximum coverage, and the Second Circuit found that that was the same situation here, and they found that that constituted a fraudulently induced settlement and that there was a dispositive claim that could be made for the fraudulently induced settlement of it. And they settled that case for $185,000 when their insurance was represented to be $200,000. So again, if the question is can you collect against a defendant, then there could never be a claim for a fraudulently induced settlement because you can always chase a defendant. You can renew a judgment. You can file it for 20 years. What it didn't say is can you seek something. It said is it a very solvent defendant that's known to the plaintiff. You change that in your characterization to any case where you might be able to continue to sue, that's different from saying where there's a defendant that's a city or whatever it is that has resources, taxpayers. I believe that Michigan... That is a difference, right? Well, it might be a difference. That's a difference. So if it's a difference, and if when that difference obtains, there is a cause of action that you might be able to recover under under Michigan law, then the argument that this would just destroy the cause of action just falls apart, doesn't it? No, because then it seems like every cause of action would be dependent on looking at the solvency of a defendant. And you don't know what the solvency... You have to look at to see whether this could have made a difference. But those are all post-judgment considerations. Nobody knows what the solvency of a defendant is. You don't get the right to discovery. You don't get creditor examinations. You don't get to engage in... What about the misrepresentation? The misrepresentation was that they would neither participate or contribute to a settlement, and therefore that had the effect of capping the coverage. How do I know that was? Well, first off, this is what the allegations are in the complaint. It was alleged... And this is a 12b-6. So this discussion is starting to get far into what sounds like a 56 motion and a summary judgment record. This simply looks at the pleadings. It was alleged in the complaint that Arrowwood made the representation that they would neither participate and contribute. That representation was conveyed to counsel, and that representation was maintained up through the time of the settlement. Judge Lawson pointed out in his opinion that there's no question that they lied about that. It was represented both in court to the judge in settlement discussions when the court was conducting mediation settlement discussions. This was a representation made by lawyers in the process of court-mediated settlement discussions. So there has to be some amount of reliance that can be made on statements that are being made to the court. Judge Lawson said in his opinion there's no question they lied about it. It was told to him on the 27th of December on the day of the settlement. Now, the defendants have admitted in their briefs that they had an agreement prior to December 27th. So those facts were wrong. It was simply incorrect. And if that was incorrect, then what they did was they achieved the result of capping the insurance exposure at 2.3 and then negotiating down from that. Whereas instead it would have been several millions of more dollars. And you have to look at this in the context that there was an identical case. Mr. Maldwan and Christine were both jointly tried and convicted. My client spent 13 years in prison after he was framed for a crime, and his case settled for half the amount. And in the other case, Arrowwood paid $1.2 or $1.5 million, some amount there. Why didn't they insist on the 2.3? What conceivable reason not to insist on the 2.3? Well, that's a matter of settlement negotiations. There's no settlement. There's no reason why they would have to limit it. Well, that's what the Second Circuit pointed that fact out in Slotkin and said, any trial lawyer, any lawyer that knows what the settlement discussions are, they're going to start from the point of the insurance discussions and insurance coverage, and they're going to argue and make the discussions. That's all that's out there. Certainly they will. That's all that's out there. If you're dealing with a $100,000 policy, then you're going to end up settling for less than the $100,000. That's all that's out there. That's how it goes in every single case when there's insurance coverage. That's all that's out there. Multiple insurance policies, and one of them says only this much. But that was the representation. The representation was when they represented to the court, when we were in court-mediated facilitation with the judge, the question was specifically asked, what is the maximum coverage? And it was represented 2.3. And then in subsequent discussions, Mr. Galluli- That was all the resources that the defendant- That was the insurance coverage. It wasn't that that was all of the resources. In most cases, all the resources are going to be the various insurance coverage. Well, I disagree that additional resources vitiates the claim for fraudulently in two settlements. But when that representation was made, then the discussions proceeded from that point. So it had the effect of capping the insurance coverage, and then the discussion then went to- That's the heart of what the district judge in this case rejected. He said, you can say all that, it all makes perfect sense, the precedents all make perfect sense, if you're talking about a defendant who doesn't have much else. This is what he said, right? But if there's much else, then the whole argument sort of falls apart, is kind of what he's saying. And you're relying on cases where it's in the part of his argument that it makes sense. Well, I've stated my position on it, Your Honor, but my time is up, and if you'd like me to answer any more, I have four minutes for rebuttal. Thank you, Counsel. Thank you. May it please the Court, Counsel? I'm Shawn Baldwin, and I represent Arrowwood Indemnity Company. And Arrowwood disagrees with Mr. Desi's characterization of the Cristini counterclaim and what misrepresentations are at issue, and the meaning he ascribes to the term maximum available insurance coverage, and that he or his counsel could have reasonably relied on any statements made by Mr. Galulli during the settlement negotiations. And certainly we disagree with what the outcome of this appeal should be. We understand. So let me get to the point. I have a question, Ms. Baldwin. Yes. So what are the conversations that Cristini allegedly had with Warren that are paragraphs 20, 27, 32, and 37 of the third-party complaint? Why are those insufficient to meet the heightened pleading requirement that Rule 9b requires? Well, first of all, the counterclaim alleges in those paragraphs that on December 3, 2013, Galulli told Cristini's counsel that the Warren defendant's maximum available insurance coverage was $2.32 million under the U.S. fire policies, and those were the policies that were in effect in 1991 when Mr. Cristini was wrongfully convicted and prosecuted and convicted. As we pointed out in our motion to dismiss, and also the counterclaim alleges that on December 3, 2013, Galulli told Cristini's counsel that Arrowood was not participating in any potential settlement. Now, Arrowood argued in its motion to dismiss that a December 3 statement that Arrowood was not participating in potential settlement is not actionable fraud as concerns Arrowood's position on December 27, 2013. You were in negotiations, or the parties were in negotiations during that period? During that, the negotiations occurred between October and December of 2013, and this Court should be aware that Arrowood and U.S. Fire were both compelled to attend the mediation in October of 2013 before Judge Lawson and also the pretrial conference on December 18, 2013. So what does it mean to participate? We were there. Mr. Cristini did not request us to be there on December 27. My understanding, you're basically arguing that this was not a misstatement. This was not a misstatement when it was made in December. It was not an actionable misstatement, not because it didn't have any effect or couldn't be reasonably relied upon, but because at the relevant point in time it wasn't. That's one of the points. Now, let's get to... Unless you want to discuss that some more. I'm more concerned with assuming that's wrong. Is that the end of your case? No, it's certainly not the end of our case. Well, you know, the real, the only representation that's at issue here is what is the maximum available insurance coverage. Right, Mr. Cristini. Right now it's the other one. Exactly, but let me just mention that Mr. Cristini clarified in his motion for reconsideration that he was not basing his fraud claim on that representation that we weren't participating, but that the crux of his claim was that he did not understand the insurance coverage. And his affidavit was attached to that. You're arguing about what he's arguing. Well, I'm arguing... I'm not asking you to... Okay, so he limited... It's today. I understand the argument that it's switched according to... Okay, so let's... So even if Mr. Cristini... Well, even if Mr. Galluli represented, which he did not, that Arrowwood was not participating in the settlement negotiations and that the maximum available insurance coverage was $2.32 million, Mr. Cristini could not have understood that to mean that was the insurance company's settlement authority. Moreover, let's look... That still goes to whether he's accurately portraying the extent to which... Well, what does maximum insurance coverage, maximum available insurance coverage mean? Mr. Galluli understood it as meaning what is the undisputed insurance available. Well, I took the two. You say that his position is switched. To the extent that it's switched, I'm seeing one is this is the amount that you're contractually... we're contractually obligated to insure for, and the other is regardless of what we're contractually obligated to insure for, we're not paying. And that was made clear. All right, so in a sense, you could say those are the same things, but you could say that they're different, right? They're absolutely different. If they're different, I take him to be arguing the second one today. That we would not participate. Right. And yet... You just not pay somehow. Somehow. Somehow it's your position, you've misrepresented your position, that you would pay anything regardless of whether... We didn't misrepresent, and we said on December 3rd, and that was accurate when said. But if... I'm trying to get to... Okay, all right, well why... I'm assuming... Okay, why shouldn't... I know you don't accept it. Okay, why shouldn't... I know you don't accept it. ...Christine have reason... Ask the question so it's... Okay, I'm sorry. Why should... Assume that the issue now, because that's what he's arguing about now, is whether they conveyed falsely that they would ever give any money in this particular claim. Okay. I'm going to assume that... They just said no. They just said no. I promise. We're not going to do it. You sue, and if we lose, then we'll pay. But right now we're not doing it. Okay. If that's the case, you still say you win, right? Right, because they could not... Can you present that argument, please? Yes. Okay. On December 27th, in addition to not being able to rely on the representations of your adversary about what insurance coverage is available, this is what Christine and his counsel knew. They knew the admitted coverage of $2.32 million. They knew the limits of the disputed coverage under the royal policies. They knew the bases for royals' position, that its coverage did not apply. They knew that the city of Warren had other assets. They knew that liability was hotly disputed. They knew that Christine had a risk of no recovery if the Warren defendants prevailed on their statute of limitations defense. Those, you say, are not factual issues. Those aren't factual issues. They knew that the amount of any jury award was uncertain. They knew that Christine did not have to settle, that he could have gone to trial, that he had a trial date. They knew that if Christine went to trial instead of settling, it would take many more years before he would see any money because Judge Lawson told him that. Is it factually undisputed that they knew that the city had resources beyond the insurance? It's not. Mr. Christine's counsel has never disputed that. Christine was represented by capable counsel who knew how to evaluate liability, damages, insurance coverage, and what coverage would likely be available to respond to the Christine suit. With that knowledge and without any conditions or any reservations of right, as Mr. Christine's affidavit establishes, they prompted Christine to agree to settle his suit for $1.5 million, which was far less, $820,000 less than the available insurance coverage he believed existed. Okay. Thank you. You've reserved some rebuttal time? Yes. Oh, you have co-counsel. Okay. Sorry. Your Honors. Go ahead. My name is Carlos Del Carpio. I'm counsel for U.S. Fire. U.S. Fire is in a somewhat different position than Arrowwood, I think, is. One can glean from the situation. Is there any daylight between the position of you and your co-counsel? Not with respect to the validity of the claim asserted in the counterclaim. There are some other issues. For us? Yes, correct. And they relate specifically to the conspiracy claim in particular. U.S. Fire is not alleged to have made a misrepresentation about its own coverage. In fact, U.S. Fire acknowledged coverage, so the $2.3 million in available insurance as U.S. Fires acknowledged available insurance. U.S. Fire did, in fact, what you expect an insurance company to do, which is step up, say, yes, this is covered, this is how much is available. There is no allegation that that assertion is a misrepresentation or incorrect in any way. The allegation against U.S. Fire and the reason U.S. Fire is in this case is relating to the issue about Arrowood's coverage, and U.S. Fire The idea is you didn't, if I understand it, the idea is that you went along with misleading them to think that the total amount was $2.2 and therefore they settled for less and you had to pay less because your limit was $2.2 something. So goes the theory, and part of our position is that the allegations that support the conspiracy claim are bald, they're essentially rote, there are no facts alleged to support it. So even if the suit were to survive, it should not survive five against U.S. Fire. Let me supplement a few points that Ms. Baldwin made that have to do really with Christine's perception of the misrepresentation. I agree with Ms. Baldwin's point about how we read and I think how we were told to read the counterclaim. We were told to read it in the motion for reconsideration. There are a couple of points I think to be made. One is that Christine in this very action filed a summary judgment motion, in fact refiled it, against Arrowood, arguing that as a matter of law, the Arrowood coverage applies to his claim. So at the time the settlement happens, Christine has a motion pending, seeking from the court as a matter of law, a finding that there is coverage under the Arrowood policies. And that belief dwarfs any absence of belief with respect to other resources. Said differently, to the extent Christine did not believe or had reason to believe that Arrowood had any source other than the U.S. Fire policy, sources from its tax base or from any other assets it may have, on the record, Christine asserted, you have an asset in the form of the Arrowood policies and the limits of those Arrowood policies, depending on which policies are implicated, is Christine's position that all of those policies were implicated pursuant to the bodily injury coverage of those policies. Again... Okay, counsel, I understand that the summary judgment filed by Christine is not what's before this court. That's correct. But the statement you make right now in supplementation of Arrowood's position, doesn't that kind of suggest that there is maybe a sufficiency of that complaint and issues for a trial or fact to consider? No, Your Honor. My point with respect to that motion that was pending is that Christine could not have believed that there was no other asset. That the other... That's a fact question. Excuse me? That's a fact question, isn't it? I disagree, Your Honor. This is a pleading filed by Christine in this litigation. In fact, it's refiled. And it's an assertion, an express assertion, that the Arrowood coverage applies. And again, depending on which policies are deemed to provide coverage, that could be $10 million or $45 million or even more. That amount of insurance that Christine says applied has to be taken into account. And I think precludes, as a matter of law, Christine's argument that it was relying on the amount of settlement dollars  because to the extent Christine argues that the misrepresentation is the maximum amount of available insurance, which is the reason why in Christine's argument, in Christine's view, Arrowood's participation is relevant, then the amount that's actually available is either $2.3 million because that's the U.S. fire limit. So Christine's motion for summary judgment basically asserts that there is coverage. Yes, correct. And you say that based on that assertion at that time, he has to believe that there is coverage. Yes, Your Honor. I don't know that there's a way, as a matter of law or procedure, to interpret it otherwise. Correct. If the maximum amount of available insurance is viewed as the limits of coverage that applies, that is a function of what the policies provide. He's saying today that the argument is not what the maximum amount actually was but what they were willing to agree to. That is correct. However, it is, I think, a combination of two different ways of understanding what maximum available insurance could be. And I think there are four ways of understanding it, two of which are not actionable, one of which, frankly, is illogical, and I think it's the illogical one we're dealing with today. I think maximum available insurance coverage, in Christine's presentation, is a combination of the acknowledged coverage under the U.S. fire policy, not the amount that U.S. fire is willing to pay because U.S. fire believed the claim had a lesser value, plus an amount that Arrowwood was willing to pay. It's not what the insurers are willing to pay. That's a different number, and that number is less than $2.3 million. It's not the amount of insurance that actually applies. That's either $2.3 million or some number greater than $2.3 million tied to whether the Arrowwood coverage actually applies. If it is a question of how much was acknowledged by the carriers, it's $2.3 million because Arrowwood did at that time and to this day disputes coverage for the Christine claim. It also disputed coverage for the Muldowan claim. In that way, it's not different. There is a difference in the insurance coverage that applies to Christine, and it has to do with how the U.S. fire policies work. When Muldowan was paid, that reduced the limits available to Christine. That's undisputed. When you get to the fourth way of understanding it, which I think is the way Christine is presenting it, maximum available insurance coverage is not either the total amount of insurance available or the amount of insurance agreed to by the carriers or the amount that the carriers were willing to pay. It was a combination of U.S. fire's limits, acknowledged limits, plus whatever Arrowwood was willing to pay. Your time is up. Thank you. Thank you. Just a couple of quick points. Your Honor, Judge Rogers, you made the point of saying that whether it's this theory or the other theory or maybe it's one and the same. I think it is one and the same, but the pleadings control. I can also see how it's different. Well, I really don't because by saying we won't participate and we won't contribute and therefore this is the maximum, I think it's the same statement. But regardless if... You could say I don't think your claim is worth that much even though... Well, that's a different statement. We're not saying that. We're not saying that. That's a different statement. But the pleadings control. So I'm hearing a lot about, and I've read this in the briefs, that Christine says this and now he says this and this has changed. The pleadings control. This is a 12B6 motion. So our pleadings state with sufficiency what Cordis says we need to have. On the question of damages... You say it's the same, but if someone sees it as a difference between... He's got four different theories. That's more than I can handle. But if you have one theory which is regardless of what our limits are, we don't see enough legal basis here based on the record to give you more than X, which is less than our legal limit. That's one theory, which might be true or false when they say that. They may say that and not mean that. Or they could say the limits just don't, when you read the contract, the limits don't apply to us. We don't owe it. Okay. Now, if those are different, which you're saying they're not different, but to some people they seem a little different, you're arguing the first of those two, right? I'm arguing that, well, we believe we've asserted both of them, that they said that they were denying the coverage. As soon as you say both, you're conceding to some extent that there's some difference. Well, I don't think there's a difference, but we alleged both. Our complaint says that they were denying coverage and they were refusing to participate or contribute, and therefore the maximum amount of insurance was misrepresented. That's what our pleadings say. And on the point of the damages, Cordes makes this point. Cordes answers the question that Judge Rogers, you've asked about, which is if we settled for less than the 2.3, then don't we lose? Cordes says plaintiff's declaration, this is, they're addressing damages because the defendants in that case, well, I know it has because I believe this, in a diversity case, it can. Were there additional resources in the Cordes case? It doesn't say that, but here's to the point. If the district court thought that made all the difference, citing Cordes doesn't answer the district court's point. Well, I disagree because in Cordes, the Supreme Court said what was sufficient was that the plaintiff's declaration alleged that he was induced to accept a settlement which was grossly inadequate for his claim. That was the specific allegation, the specific pleading of damages in Cordes, and the Michigan Supreme Court found that sufficient, and I think it's the same here. So I believe that controls when we look at this question of damages and whether you settled for less. As far as what my brother and sister counsel, their arguments about this was a reliance on the policy provisions and the interpretation of the policy, it wasn't. I mean, this was a representation that was made to the court, and what I find really troubling about this, this isn't just sort of street negotiation, you're talking to lawyers and you're having bantering. These representations were made to the court. This was in the context of Judge Lawson sitting here and hearing and asking a specific question. So there's got to be some presumption that you can rely on what judges and officers of the court, we should be able to rely on these representations that there's no additional coverage, that this party is not participating. When Judge Lawson first found out that they had contributed $500,000, he sort of looked like, you've got to be kidding me, because this is what was said over and over, including on the day of the settlement on December 27th. So I believe that under Michigan law, we've stated a claim and the rest of the questions are fact questions, so we would ask the court to reverse. Thank you, Counsel. Thank you, Your Honors. The case will be submitted.